**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

LIDA HAGHNEGAHDAR,

    Plaintiff,

    v.

OLD DOMINION UNIVERSITY,

    Defendant.

Case No. 2:25-cv-799

## OPINION & ORDER

This case arises out of alleged sex-based[1] discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and wage discrimination in violation of the Equal Pay Act of 1986 (EPA), 29 U.S.C. § 206(d). ECF No. 1. Defendant Old Dominion University

---

[1] Throughout this Opinion and Order, the Court uses the term "sex" for purposes of consistency and because that is the language used in the relevant statutes and throughout the plaintiff's complaint. *See* 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 206(d)(1). However, the Court notes that "sex," as used in this context, includes sex, sexual orientation, and gender identity. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 651–52 (2020); *see also Bauer v. Lynch*, 812 F.3d 340, 347 n.9 (4th Cir. 2016) (recognizing that "although it may be useful to disaggregate the definition of 'gender' from 'sex' for some purposes—the former referring to cultural or attitudinal characteristics distinctive of the sexes, as opposed to their physical characteristics—courts have frequently used the term 'sex' and 'gender' interchangeably to refer simply to the fact that an employee is male or female.") (quotation marks and citation omitted); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 749 n.1 (4th Cir. 1996) ("Because Congress intended that the term 'sex' in Title VII mean simply 'man' or 'woman,' there is no need to distinguish between the terms 'sex' and 'gender' in Title VII cases), *abrogated on other grounds by Bostock*, 590 U.S. 644. And the Court notes that although the distinction between "sex" and "gender" does not have *legal significance* here, the distinction *is significant*.

moves to dismiss under Fed. R. Civ. P. 12(b)(6). ECF Nos. 3 (motion), 4 (memorandum). For the reasons stated below, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

At this stage, the Court assumes the facts alleged in the complaint are true. ODU is a public institution of higher education located in Norfolk, Virginia and is an employer subject to the requirements of Title VII and the EPA. ECF No. 1 ¶ 6. The plaintiff was employed as a research faculty member in ODU's School of Cybersecurity. *Id.* ¶ 5.

In August 2023, ODU appointed the plaintiff for a 10-month, non-tenure track position. ECF No. 1 ¶ 13; ECF No. 1-2 at 1. The next month, the director informed the plaintiff that she would be required to teach two courses annually, although teaching was outside the plaintiff's primary duties as a research faculty member. ECF No. 1 ¶ 14. ODU instead tasked the plaintiff with teaching three full-size courses—among them, a complex undergraduate class with over 50 students and approximately 2,400 graded items. *Id.* at 14–15; ECF No. 1-2 at 1. In comparison, one of the plaintiff's male research faculty counterparts was assigned to teach one course with no more than 10 students, and the remainder of her male counterparts had no teaching duties. ECF No. 1 ¶ 15; ECF No. 1-2 at 1. Despite the plaintiff's heavier teaching load, she was paid a lower salary than her male colleagues. ECF No. 1 ¶ 17; ECF No. 1-2 at 1.

The plaintiff was also subjected to higher scrutiny and hiring standards compared with her male counterparts. ECF No. 1 ¶¶ 16, 18. Whereas the plaintiff was questioned about traveling while working remotely on a grant during the summer of 2024, a period not covered by her contract, a male counterpart on a 12-month contract was permitted to work remotely from another state without issue. *Id.* ¶ 16. And although the plaintiff was hired following a formal and competitive interview process involving seven faculty members from two departments, ODU subsequently hired—between September 2023 and August 2024—at least four male research faculty members through an informal process that did not include public job postings, applications, or interviews. ECF No. 1 ¶¶ 13, 18; ECF No. 1-2 at 1.

In February 2024, the plaintiff's supervisor submitted a negative evaluation report recommending her non-reappointment. ECF No. 1 ¶ 19. After the plaintiff contested the evaluation, alleging it was prepared without proper faculty committee input, her contract was renewed for another year. *Id.* In November 2024, a faculty evaluation committee reviewed the plaintiff's performance and recommended her for reappointment for a third year, but the director recommended against the plaintiff's reappointment based on pretextual reasons, including alleged performance issues and budgetary constraints. *Id.* ¶¶ 20–21. In December 2024, ODU officially notified the plaintiff that her contract would not be renewed. *Id.* ¶ 22. The plaintiff was informed of her non-reappointment "outside the required deadlines," and a replacement—a male with less experience, fewer qualifications, and no background

3

in the relevant field of study—was hired almost immediately thereafter. *Id.* ¶¶ 26–28.

As a result, on January 23, 2025, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that she had been subjected to disparate terms and conditions of employment, unequal wages, and discharge on the basis of sex, in violation of Title VII and the EPA. ECF No. 1 ¶ 7(a); ECF No. 1-2 (Charge No. 437-2025-00651). The charge alleged a disparity in teaching load, salary, and hiring process between the plaintiff and her male colleagues. ECF No. 1-2 at 1. The charge also stated that the plaintiff's contract was not renewed for the 2025–2026 academic year despite committee recommendation to the contrary and in violation of the Board of Visitors Policy (BoVP). *Id.* The EEOC issued a notice of right to sue on September 15, 2025. ECF No. 1-3.

The plaintiff filed suit in this Court on December 13, 2025, alleging three counts: sex discrimination and hostile work environment in violation of Title VII (Count I); retaliation in violation of Title VII (Count II), and violation of the EPA (Count III). ECF No. 1 ¶¶ 20–41. The plaintiff seeks compensatory and punitive damages, unpaid wages and an additional equal amount as liquidated damages, attorney fees and costs, and pre- and post-judgment interest. *Id.* ¶¶ 43–47, 48(c)–(h). She additionally requests a declaratory judgment and injunctive relief. *Id.* ¶¶ 48(a)–(b).

4

## II.     LEGAL STANDARD

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.    ANALYSIS

### A.     Administrative Exhaustion of Title VII Claims

ODU argues that the plaintiff failed to include any allegations regarding a hostile work environment or retaliation in her EEOC charge, and those claims are therefore procedurally barred. ECF No. 4 at 6–9. With respect to the plaintiff's retaliation claim only, the Court agrees.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII authorizes suit for two separate types of unlawful employment practices: (1) "discrete

discriminatory acts" and (2) "hostile work environment" claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

To have standing to file suit under Title VII, a plaintiff must exhaust their administrative remedies by filing a charge with the EEOC. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "This requirement . . . serves two important purposes": (1) "it notifies the charged party of the asserted violation," and (2) "it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984) (quotation marks and citation omitted).

"A plaintiff's EEOC charge defines the scope of [their] subsequent right to institute a civil suit." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (quotation marks and citation omitted). In other words, "factual allegations made in formal litigation must correspond to those set forth in the [EEOC] charge" and, as such, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* at 172 (quotation marks and citations omitted, alterations rejected). "A claim will [] typically be barred if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). And "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of

6

misconduct." *Id.* However, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.* Because "EEOC charges are often not completed by lawyers," they are to be "construed with utmost liberality." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (quotation marks and citation omitted).

Here, there is no mention of retaliation—or information from which retaliation might be reasonably inferred—in the EEOC charge since it only alleges that the plaintiff was discharged "because of [] sex.". ECF No. 1-2 at 1. And the charge makes no mention of any protected conduct preceding the alleged discriminatory discharge. *See id.*

The plaintiff concedes that retaliation was not alleged in the EEOC charge but argues that ODU was nevertheless placed on notice as a result of the plaintiff's pre-filing complaints. ECF No. 5 at 6. But in determining what claims are properly exhausted, the Court must look "only to the charge filed" with the EEOC and cannot "read into [the] charge[] allegations [it] do[es] not contain." *Balas*, 711 F.3d at 408. Accordingly, consideration of the exhibits cited in the plaintiff's opposition, ECF No. 5 at 6, does not factor into the analysis.[2] Additionally, whether the plaintiff is at fault

---

[2] For example, although the pre-charge inquiry, ECF No. 5-4 at 2, notes "retaliation" based on "complain[ing] . . . about job discrimination," the inquiry does not constitute an official charge of discrimination. *See* EEOC Public Portal User's Guide, Vol. 2, at 5, https://publicportal.eeoc.gov/Portal/content/UserGuides/V2-Submit_an_Online_Inquiry_to_EEOC.pdf ("submitting an inquiry is different from filing a charge of discrimination."). Instead, the inquiry is confidential, serving only to "allow [the] EEOC to "evaluate [the] information and advise [] on what [the EEOC] can do to

for the omission of the retaliation claim from the charge is not relevant. *See* ECF No. 5 at 6 (arguing that "the omission does not appear to be the fault of [the] [p]laintiff"). Because the plaintiff's retaliation claim is beyond the scope of the EEOC charge, ODU's motion to dismiss as to Count Two will be granted.[3]

Next, the parties dispute whether the plaintiff's charge sufficiently raised allegations of a hostile work environment to satisfy the administrative exhaustion requirement. Importantly, this analysis is distinct from whether the allegations in the charge amount to a hostile work environment under Rule 12(b)(6). For purposes of the exhaustion analysis, the Court construes the charge with "utmost liberality" in evaluating whether the plaintiff's federal claim is "reasonably related" to the charge contents such that the intended purposes of notice and conciliation are served. *Balas*, 711 F.3d at 408; *see Chacko*, 429 F.3d at 510.

First, the Court observes that the conduct described in the charge is not only "reasonably related" to the allegations set forth in the complaint but is in nearly all respects the same.[4] The same conduct that supports the plaintiff's sex discrimination

---

assist," and it is not shared with the employer. *Id.* at 5, 9, 13. As such, it cannot be considered by the Court for exhaustion purposes.

[3] The plaintiff requests leave to amend the complaint to add an allegation of reprisal in support of her retaliation claim, arguing that such amendment will not prejudice ODU because the defendant is on notice of the allegations by virtue of the plaintiff's rebuttal letter, a letter dated January 2025, and elections to the EEOC. ECF No. 5 at 6. Because the retaliation claim has not been administratively exhausted and is therefore not properly before the Court, the request to amend will be denied.

[4] The only allegation in the complaint that is wholly absent from the charge is that the plaintiff experienced higher scrutiny than her male counterparts, specifically due to being questioned about working remotely. ECF No. 1 ¶ 16. But because this

claim is alleged to be sufficiently severe and pervasive as to alter the conditions of the plaintiff's employment and create a hostile and abuse work environment. ECF No. 1 ¶¶ 23–24. Therefore, the charge placed ODU on notice of the conduct upon which the plaintiff relies in asserting her hostile work environment claim.

Additionally, although ODU construes the conduct set forth in the charge as constituting discrete acts of discrimination and argues that the charge contains no indication of an on-going course of conduct, ECF No. 4 at 6–8, the Court disagrees. The EEOC charge specifically characterizes the alleged discriminatory conduct as "[c]ontinuing [a]ction" that occurred between August 2023 and January 2025. ECF No. 1-2 at 1. "Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209, n.5 (4th Cir. 2019). And at least some of the alleged conduct is of a continuing nature—in particular, being subjected to a disproportionately heavy teaching load throughout a period of approximately two-and-a-half years. Accordingly, the Court finds that the plaintiff has exhausted her administrative remedies as to the conduct supporting her hostile work environment claims.

B.    **Time-Barred Claims**

ODU argues that the plaintiff's discrimination claims regarding her disproportionately heavy teaching load and more arduous hiring process should be dismissed as time barred. ECF No. 4 at 16–17. Specifically, ODU contends that the

---

allegation likely would be "developed by reasonable investigation" of the charge, the Court will not dismiss it on exhaustion grounds. *Walton*, 33 F.4th at 172.

charge was filed more than 300 days after the date on which ODU "tasked" the plaintiff with teaching three courses and more than 300 days after the informal hiring of the plaintiff's male counterparts. *Id.* at 17. The plaintiff appears to concede that these claims are time-barred insofar as they are alleged to be discrete acts of sex-based discrimination. *See* ECF No. 5 at 11. However, the plaintiff argues that the claims are not time-barred to the extent that they support her hostile work environment claim pursuant to the "continuing violation" theory. *Id.* That is correct.

Title VII has strict filing requirements. A Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice *occurred*." 42 U.S.C. § 2000e-5(e)(1). A claim not filed within this time limit is barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A discrete discriminatory act "occurred on the day that it happened." *Id.* at 10 (quotation marks omitted). "The Eastern District of Virginia has held on multiple occasions" that a discrete discriminatory act occurs when "the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Spida v. BAE Sys. Info. Solutions, Inc.*, No. 1:16-cv-979, 2016 WL 7234088, at *4 (E.D. Va. Dec. 14, 2016) (quotation marks and citation omitted). Importantly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 563 U.S. at 113.

In contrast, hostile work environment claims by "[t]heir very nature involve[ ] repeated conduct" that "cannot be said to occur on any particular day" but instead

occurs over a period of time. *Morgan*, 536 U.S. at 115. "Such claims are based on the cumulative effect of individual acts." *Id.* Title VII "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability." *Id.* at 118. In other words, "the incidents constituting a hostile work environment are part of one unlawful employment practice." *Id.* Therefore, for the charge to be timely, it is only necessary that "an act contributing to the [hostile work environment] claim occur[ed] within the filing period." *Id.* at 117.

Here, the plaintiff alleges that she was "tasked with teaching three separate courses" "[n]ot long after starting employment with [ODU]" in August 2023. ECF No. 1-2 at 1; *see also* ECF No. 1 ¶ 14 ("The period of discrimination began on or about September 2023 when the new director . . . informed [the plaintiff] that she would be required to teach two courses per year, despite teaching being outside her primary duties."). As the plaintiff's charge was filed on January 23, 2025, any alleged conduct supporting a sex-based discrimination claim must have occurred on or after March 29, 2024. Because the date on which the plaintiff was informed of the course load decision pre-dates the 300-day filing deadline, a discrimination claim based on the assignment of a more burdensome workload is time-barred. However, the plaintiff's course load may be considered to the extent that it supports her hostile work environment theory, as the alleged violation is of an ongoing nature and continued into the filing period.

Next, the plaintiff alleges that ODU hired at least four male research faculty members through an informal process that stood in "stark contrast" to the formal,

11

competitive hiring process she was required to complete. ECF No. 1 ¶ 18. The plaintiff states that the informal hirings occurred between September 2023 and August 2024. ECF No. 1-2 at 1. However, it is her own hiring process that she alleges to be an incident of sex-based discrimination against her, and that occurred in August 2023. Because that date falls outside the 300-day filing period, it is time-barred insofar as it supports a claim for sex-based discrimination. However, here again, to the extent allegations of a discriminatory hiring process support the plaintiff's hostile work environment claims, they are not time barred. And because Title VII does not prevent an employee from using time-barred acts as "background evidence in support of a timely claim," insofar as differences in the hiring process serve as background evidence of discriminatory animus, they are not prohibited. *Morgan*, 536 U.S. at 109.

## C.     Remaining Claims

The Court now turns to the issue of whether the allegations in the complaint state viable claims for sex discrimination and hostile work environment under Title VII (Count I) and for violation of the EPA (Count III).

### i.     *Discrimination (Count One)*

In support of her sex-based discrimination claim, the plaintiff alleges that ODU took four discriminatory actions against her in violation of Title VII: (1) assignment of a disproportionately heavy teaching load; (2) heightened scrutiny regarding work location and attendance; (3) undergoing a materially different hiring process than her male counterparts; and (4) non-reappointment. ECF No. 1 ¶¶ 13–18, 21–23. As previously addressed, *see supra* Section III.B., any claim of sex-based

discrimination based on teaching load and hiring process is time-barred. Therefore, only the plaintiff's allegations of non-reappointment and heightened scrutiny regarding work location and attendance remain. For the reasons outlined below, only the plaintiff's claim of discriminatory non-reappointment survives Rule 12(b)(6) scrutiny.

To satisfy Rule 12(b)(6), "an employment discrimination plaintiff need not plead [facts establishing] a *prima facie* case of discrimination," but instead must "allege facts to satisfy the elements of a cause of action created by" Title VII. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)) (quotation marks and other citation omitted) (italics added). The complaint must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (2015) (quoting *Twombly*, 550 U.S. at 555). Accordingly, although proof of the four elements of a *prima facie* case of sex-based discrimination is not required at this juncture, the plaintiff must plausibly allege facts sufficient to meet these elements. *See id.*

A Title VII discrimination claim has four elements: "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins*, 936 F.3d at 207. When the adverse employment action asserted is discriminatory discharge, the plaintiff must allege, in addition to membership in a protected class and adverse employment action, that the plaintiff was "meeting [the

13

employer's] legitimate expectations" at the time of such discharge, and that "the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

As an initial matter, the plaintiff is a member of a protected class based on her sex, thus satisfying the first element. ECF No. 1 ¶ 5; 42 U.S.C. § 2000e-2(a)(1) (identifying sex as protected class under Title VII). However, addressing the third element—adverse employment action—further narrows the plaintiff's viable claims. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quotation marks and citations omitted, alterations accepted). To be considered "adverse," the plaintiff need only show that the actions "brought about some 'disadvantageous' change." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (internal quotation marks omitted). The plaintiff's allegation that the director "questioned her for traveling while she was working remotely on a grant" during the summer of 2024 does not satisfy that standard. ECF No. 1 ¶ 16. The plaintiff does not allege any facts that indicate the terms or conditions of her employment were altered based on the director's questioning. *See id.* Therefore, to the extent the plaintiff endeavors to state a claim for sex-based discrimination based on being questioned about remote work, the claim will be dismissed. But insofar as such allegation supports the plaintiff's hostile work environment claim, it survives.

14

The plaintiff's remaining viable discrimination claim is based on her non-reappointment. This allegation clearly constitutes an adverse employment action as it resulted in a significant change in the plaintiff's employment status. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) (holding that "where an employee seeks renewal of an employment contract, non-renewal . . . constitutes an adverse employment action for purposes of Title VII" and collecting cases holding the same). Accordingly, the third element is satisfied.

Regarding the second element, the plaintiff includes facts that allow the Court to plausibly infer that she was performing her job satisfactorily at the time that ODU advised her of its decision not to renew her contract in December 2024. In a November 18, 2024 letter attached to the complaint, the Chair of ODU's School of Cybersecurity Teaching Evaluation Committee wrote that "[b]ased on a thorough review . . . the [faculty evaluation] committee reached a unanimous decision . . . to endorse [the plaintiff's] overall teaching effectiveness positively." ECF No. 1-4 at 1. The letter goes on to say that the plaintiff "met overall student success requirements" and that her "overall teaching effectiveness [was] in the high range." *Id.*

ODU argues that other facts the plaintiff put forward indicate that she was not performing satisfactorily from the perspective of her employer. ECF No. 4 at 10. In a November 27, 2024 letter attached as an exhibit to the complaint, the director of ODU's School of Cybersecurity states the following:

> Both [the plaintiff's] supervisor and the Faculty Evaluation Committee did not recommend reappointment of [the plaintiff] stating that she did not meet expectations. I recommended her for reappointment for another year

15

> contingent on making significant improvements in several areas and working on a performance improvement plan. However, she has not met the expectation[s] set in the performance improvement plan.

ECF No. 1-5 at 2. But as best the Court can tell, this letter is the subject of the plaintiff's pretext allegations.[5] *See* ECF No. 1 ¶ 21. Accepting those allegations as true—as the Court must at the Rule 12(b)(6) stage—the plaintiff has done enough to plausibly allege the second element of her discrimination claim.

Finally, with respect to the fourth element, the plaintiff's allegations that ODU "hired a replacement who was a male, with less experience, fewer qualifications, and who had no background in the relevant field of study" suffices at this juncture to raise a plausible inference that "the position remained open to or was filled by similarly qualified applicants outside [her] protected class."[6] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). This allegation also supports the plaintiff's claim that ODU's explanation for her non-reappointment was pretextual. *Id.* ¶¶ 27–28. Accordingly, ODU's motion to dismiss the plaintiff's claims

---

[5] The complaint states that "[d]espite the faculty committee's positive recommendation [on November 18, 2024], Dr. Takabi submitted a letter to the Dean … recommending against [the plaintiff's] reappointment, citing alleged performance issues and budgetary constraints." ECF No. 1 ¶¶ 20–21. Although the plaintiff notes a different date, because the contents otherwise align, the Court understands ECF No. 1-5 to be the letter referred to in the complaint.

[6] ODU argues that the plaintiff fails to plausibly establish that her non-reappointment was because of her sex because she "has not alleged that any similarly-situated male employees were themselves reappointed for a third year under similar circumstances." ECF No. 4 at 10. But at this stage, the plaintiff is only required to plausibly allege that the male applicant who subsequently filled the position was "similarly qualified"—not identically situated.

16

of sex-based discrimination based on allegations of discriminatory non-reappointment will be denied.

### ii.    *Hostile Work Environment Claim (Count One)*

The plaintiff alleges that ODU's conduct—hiring her via a formal process, requiring her to manage a much heavier teaching load, and scrutinizing her about remote work during the summer of 2024—was sufficiently severe and pervasive to create a hostile and abusive work environment. Because the Court concludes that the facts alleged do not meet the criteria for a hostile work environment claim, this claim will be dismissed.

To avoid dismissal of a hostile work environment claim based on sexual harassment, a complaint must include factual allegations sufficient to state a plausible claim that the plaintiff was subjected to: "(1) unwelcome conduct; (2) that is based on the plaintiff's [sex]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Decoster v. Becerra*, 119 F.4th 332, 337 (4th Cir. 2024) (quotation marks and citation omitted). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); *see also Farager v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment.").

17

"In assessing the legal sufficiency of a plaintiff's claim, [the court] focus[es] on whether the work environment, when viewed both subjectively and objectively, can be perceived as being hostile or abusive." *Hernandez v. Fairfax Cnty.*, 719 Fed. App'x 184, 187 (4th Cir. 2018) (unpublished) (citing *Harris*, 510 U.S. at 22). "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Id.* There is no "mathematically precise test" for determining when a hostile or abusive work environment exists. *Harris*, 510 U.S. at 22. Rather, courts examine the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* at 23.

Here, the alleged conduct does not entail any "discriminatory intimidation, ridicule, [or] insult," nor does the plaintiff allege that the conduct interfered with her ability to do her job. *Harris*, 510 U.S. at 21. Moreover, from an objective perspective, the alleged conduct is not sufficiently severe or pervasive to create an abusive work environment, however objectionable the conditions may have been from the plaintiff's perspective. *See, e.g., Combs-Burge v. Rumsfeld*, 170 Fed. App'x 856, 862 (4th Cir. 2006) (unpublished) ("[A]ssigning individuals to difficult jobs [is] not objectively abusive . . . particularly considering that we do not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination.") (quotation marks and citation omitted); *Faragher*, 524 U.S. at 788 (The standard is designed to be "sufficiently demanding"

18

such that it "will filter out complaints attacking the ordinary tribulations of the workplace."). Accordingly, at a minimum, the plaintiff fails to satisfy the third element of the hostile work environment claim, and it must be dismissed.

### iii.    Violation of the EPA (Count Three)

Because the plaintiff fails to plausibly allege the elements of an EPA violation, Count Three will be dismissed.

The EPA "prohibits [sex]-based discrimination by employers resulting in unequal pay for equal work." *U.S. E.E.O.C. v. Md. Insurance Admin.*, 879 F.3d 114, 120 (4th Cir. 2018); 29 U.S.C. § 206(d)(1). To survive dismissal under Rule 12(b)(6), a plaintiff alleging wage discrimination under the EPA must plausibly show that "(1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *Md. Insurance Admin.*, 879 F.3d at 120 (setting forth the elements of a prima facia case of discrimination under the EPA); *Twombly*, 550 U.S. at 570 (At the Rule 12(b)(6) stage, a plaintiff need only "plead . . . enough facts to state a claim to relief that is plausible on its face"). ODU argues that the plaintiff fails to plausibly plead any of the elements of her EPA claim. ECF No. 4 at 23–26. The Court agrees.

In vague and conclusory fashion, the plaintiff alleges that ODU paid her "less than [] her male colleagues who hold the same [r]esearch [f]aculty position," ECF No. 1 ¶¶ 17, 37, that she "performed work that was substantially equal to, and often exceeded, that of her higher-paid male colleagues," and that her "duties, including

19

her significant uncompensated teaching load, required skill, effort, and responsibility equal to or greater than that of her male counterparts," *id.* ¶ 38. In other words, the plaintiff merely recites the elements of her claim—apart from brief mention of an increased teaching load—without alleging *any facts* in support of those elements. She fails to identify any specific comparator, and beyond asserting that her male counterparts held the same research faculty position, she sets forth no facts comparing her skill, effort, responsibility levels, and working conditions to that of her male counterparts. Although great detail is not required in assessing the complaint now, there must be sufficient facts to allow the Court to infer "more than the mere possibility of misconduct" based on its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. As currently drafted, the complaint does not allow the Court to do so.

Accordingly, the plaintiff has failed to state a plausible wage discrimination claim under the EPA,[7] and Count Three will be dismissed.

### D.    Punitive Damages

The plaintiff seeks punitive damages against ODU under Title VII. ECF No. 1 ¶ 48(e). Punitive damages are not recoverable against "a government, government agency[,] or political subdivision" under Title VII. 42 U.S.C. § 1981a(b)(1). ODU is a Virginia public institution of higher education and is thus a state entity that is not

---

[7] Although "[a] plaintiff may assert claims based on unequal pay for equal work under both the EPA and Title VII," *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994), the plaintiff appears only to bring a pay-disparity claim under the EPA. *See* ECF No. 1 ¶¶ 20–30 (making no mention of unequal pay as to her cause of action for Title VII sex discrimination).

20

liable for punitive damages. *See* Va. Code § 23.1-2000. And the plaintiff concedes in her opposition to the motion to dismiss that because ODU is a government agency, she cannot recover punitive damages against it. ECF No. 5 at 18–19. Therefore, the plaintiff's request for punitive damages under Title VII will be stricken.

## IV. CONCLUSION

For the foregoing reasons, ODU's motion to dismiss (ECF No. 3) is **GRANTED IN PART** and **DENIED IN PART**.[8]

All claims are hereby **DISMISSED**, except the plaintiff's discrimination claim based on non-reappointment as alleged in Count One.

All claims the Court has dismissed based on the time bar are **DISMISSED WITH PREJUDICE.**

The plaintiff's request for punitive damages as to her remaining discrimination claim is **STRICKEN**.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 30, 2026

---

[8] The Court's decision to deny ODU's motion to dismiss is in no way intended to communicate that the plaintiff's case will survive at summary judgment. At the motion-to-dismiss stage, the Court is required to make all reasonable inferences in favor of the plaintiff. But the Court encourages the parties to assess whether the remaining allegations in this case are strong enough to survive more exacting scrutiny.