**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

LIDA HAGHNEGAHDAR,

Plaintiff,

v.

OLD DOMINION UNIVERSITY,

Defendant.

Case No. 2:25-cv-799

**OPINION & ORDER**

Defendant Old Dominion University seeks summary judgment on an employment discrimination claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., by a former faculty member who was not reappointed after her year-to-year contract ended. Because the plaintiff does not demonstrate that she was meeting the university's expectations at the time of the non-reappointment decision, that those expectations were illegitimate, or that the non-reappointment happened under circumstances that raise an inference of sex discrimination, ODU is entitled to judgment as a matter of law.

## I. BACKGROUND

The plaintiff claims ODU discriminated against her on the basis of sex when it declined to reappoint her for a third year as a research assistant professor. The following undisputed facts are sufficient for the Court to reach a decision:[1]

[1] Rather than identifying items in ODU's proposed statement of undisputed facts with which she disagrees, the plaintiff submitted an alternative statement of facts. ECF

1. The plaintiff was first appointed as a research assistant professor in ODU's School of Cybersecurity for academic year 2023–2024, as part of the Cybersecurity Research Cluster (CRC). ECF No. 17, Statement of Undisputed Facts (SOF) ¶¶ 3, 5; ECF No. 17-1 at 9:4–21; ECF No. 17-2 at 2–3.

2. The head of the CRC developed "five foci" for the CRC. Focus three was "write and submit proposals for funded research." ECF No. 17, SOF ¶ 9; *see* ECF No. 17-2 at 15–17.

3. Reappointment and non-reappointment decisions for faculty not on a tenure track relied on annual reviews "based on the performance of the individual faculty member . . . and the needs of the department." ECF No. 17, SOF ¶ 10; *see* ECF No. 17-2 at 14.

4. The annual review process proceeds in three main steps: (1) a faculty evaluation committee reviews the faculty member's submissions and recommends either reappointment or non-reappointment; (2) the school director considers the committee recommendation, along with the faculty member's performance and the department's needs, and makes a recommendation to the dean; and (3) considering

---

No. 20-1 at 2–14. That is inconsistent with the way courts in this district routinely apply E.D. Va. Civ. R. 56(B). *See, e.g.*, *Nyimpha v. Ross*, No. 1:19-cv-258, 2020 WL 819839, at *1 (E.D. Va. Feb. 19, 2020) ("The nonmovant must respond to each enumerated fact and either admit or contest by citing to record evidence."); *see also Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 744 (E.D. Va. 2017) (alternative statement of undisputed facts "serve[d] to undermine Local Rule 56(B) by frustrating the ability to determine which material facts are genuinely in dispute"). Accordingly, after reviewing the plaintiff's alternative presentation, the Court considers these facts, as presented by ODU, to be undisputed.

both recommendations and the needs of the college, the dean makes a final decision. ECF No. 17, SOF ¶ 11; *see* ECF No. 17-4 at 3:19–4:15.

5. In January 2024, a faculty committee recommended that the plaintiff not be reappointed for academic year 2024–2025, because it deemed her performance under the CRC's five foci unsatisfactory. ECF No. 17, SOF ¶ 13, 14; ECF No. 17-2 at 17.

6. However, the plaintiff's supervisor recommended that the dean reappoint the plaintiff but that the plaintiff should be placed on a performance improvement plan (PIP). ECF No. 17, SOF ¶ 17; *see* ECF No. 17-2 at 19.

7. In the spring of 2024, the plaintiff was reappointed for the 2024–2025 academic year. ECF No. 17, SOF ¶ 20; ECF No. 17-2 at 20.

8. The main purposes of the PIP were (1) to identify potential target programs and due dates to submit funding proposals, and (2) to identify potential target venues for publications and due dates to submit papers. ECF No. 17, SOF ¶ 21; ECF 17-2 at 24–25.

9. The plaintiff herself created the PIP, and her supervisor approved it. ECF No. 17, SOF ¶ 23; ECF No. 17-1 at 27:19–28:25.

10. None of the grant proposals the plaintiff listed in her PIP were submitted by the due dates, and the plaintiff met none of the four deadlines in the PIP related to submitting written work for publication. ECF No. 17, SOF ¶¶ 25–26; ECF No. 17-1 at 29:11–36:13.

11. In November 2024, a review committee recommended reappointing the plaintiff based on her teaching, research, and service, but reported that, based on what the plaintiff presented, it could not evaluate her performance in relation to the goals outlined in the PIP. ECF No. 17, SOF ¶ 30; ECF No. 17-2 at 27.

12. In his own November 2024 report, the plaintiff's supervisor advised the dean that the plaintiff had not met the expectations set forth in the PIP. ECF No. 17, SOF ¶ 31; ECF No. 17-2 at 29.

13. The supervisor's recommendation also stated that no funds were available to sponsor the plaintiff's position the following academic year, because the position funded by the Coastal Virginia Center for Cyber Innovation—which sponsored the plaintiff's base salary—had been filled. ECF No. 17, SOF ¶ 31; ECF No. 17-2 at 29; *see* ECF No. 17, SOF ¶ 8; ECF No. 17-5 ¶ 7.

14. In December 2024, the dean did not recommend the plaintiff for reappointment. The dean stated that this decision was "based on [the plaintiff] failing to meet the criteria of the [PIP] and the unavailability of funding." ECF No. 17, SOF ¶ 32; ECF No. 17-2 at 30.

## II. LEGAL STANDARD

### A. Summary Judgment

A court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do that, the movant must support their assertions as to undisputed facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

If the moving party is successful in the first instance, then the burden "shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Gnik*, 93 F.4th at 200 (citation and quotation marks omitted); *see Celotex*, 477 U.S. at 324. "The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant." *Gnik*, 93 F.4th at 200 (citation omitted). However, if the non-movant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court is not required to consider any materials in the record outside what the parties include with their briefing. Fed. R. Civ. P. 56(c)(3).

**B. Title VII Discrimination Claims**

Title VII outlaws employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1) (discrimination). A plaintiff may prove a discrimination claim through direct or indirect evidence of intentional discrimination, or through circumstantial evidence under the three-step scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308–09 (2025) (discrimination).

At the first step, the plaintiff bears the "initial burden" to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To do that, the plaintiff "must show that (1) [they are] a member of a protected class; (2) [their] employer took an adverse action against [them]; (3) [they] had been fulfilling [the] employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021).

If the plaintiff makes out a prima facie case, then the employer must articulate a nondiscriminatory reason for the alleged adverse action. *McDonnell Douglas*, 411 U.S. at 802. Finally, if the employer puts forward an innocent rationale, the

plaintiff may respond by showing that the proffered justification was a pretext for discrimination. *Id.* at 804.

## III. ANALYSIS

ODU contends that the plaintiff cannot make out a prima facie case of sex discrimination because she lacks evidence to demonstrate that she had been fulfilling the university's legitimate expectations at the time it chose not to reappoint her or that the decision not to reappoint her happened under circumstances that raise an inference of discrimination. *See* ECF No. 17 at 17–23. Alternatively, ODU asserts that it can demonstrate nondiscriminatory reasons for its adverse employment decision, and the plaintiff cannot rebut those reasons with proof that they were pretextual. *See id.* at 23–26.[2] ODU is correct across the board.

The plaintiff argues that ODU's expectations were illegitimate. *See* ECF No. 20-1 at 19. Therefore, analysis of the third element of the prima facie case (under step one of the *McDonnell-Douglas* framework) merges with the pretext assessment (step three). *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006). The Court will address that set of considerations first and explain three reasons why the plaintiff's claim is not entitled to jury consideration. Then the Court will turn back to the prima facie case and discuss why the plaintiff also fails to show that the circumstances of her non-reappointment support an inference of discrimination.

[2] ODU also contends that the plaintiff cannot establish recoverable damages. ECF No. 17 at 27–28. Because her claim fails for other reasons, the Court need not engage with those arguments.

Because four grounds for its summary judgment decision are more than enough, the Court declines to address the parties' other arguments.

### A. Fulfilling Legitimate Expectations

The plaintiff argues that when her performance was measured against the "objective criteria that [were] uniformly applied to everyone," she met ODU's expectations—it was only under "shifting criteria" that her supervisors "arbitrarily applied" that she failed. ECF No. 20-1 at 19. Thus, the plaintiff contends that some of the university's expectations were not 'legitimate,' and once the illegitimate expectations are eliminated from consideration, the evidence supports her claim.

The relevant expectations are those that were in place "at the time" ODU decided not to reappoint the plaintiff.[3] *Sempowich*, 19 F.4th at 650. Those expectations included—at least—the requirements outlined in a June 2024 performance improvement plan (PIP) that the plaintiff herself created and that her supervisor approved. *See* ECF No. 17, SOF ¶ 23; ECF No. 17-1 at 27:19–28:25; *see also* ECF No. 17-2 at 21–22 (PIP). The only conclusion the record supports is that the plaintiff did not fulfill the expectations outlined in the PIP. *See* ECF No. 17-1 at

[3] The plaintiff asserts that "[s]he suffered adverse employment action when she was not recommended for reappointment in 2023, again in 2024 when she was arbitrarily placed on a PIP, and ultimately when she was denied reappointment in 2025." ECF No. 20-1 at 19. Non-reappointment is facially an adverse employment action, but the other two actions are not. And the plaintiff produces no *evidence* that the mere recommendation of non-reappointment or the establishment of a PIP caused any "harm respecting an identifiable term or condition of [her] employment." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024); *see Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025). Therefore, the only theory of adverse employment action that survives to be analyzed here is the plaintiff's actual non-reappointment for a third academic year.

29:2–37:5[4]; *see also* ECF No. 17, SOF ¶ 27 (The "goals and deadlines" in the PIP "were not met."). Thus, the plaintiff can succeed only if she demonstrates that the expectations outlined in the PIP were illegitimate.

Employer expectations are illegitimate when they are a "sham designed to hide the employer's discriminatory purpose." *Warch*, 435 F.3d at 518 (citing *Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002)). In making this determination, district courts in the Fourth Circuit—applying the Second Circuit's standard from *Thornley v. Penton Pub., Inc.*, 104 F.3d 26 (2d Cir. 1997)—look to whether there is evidence that the employer's expectations were not "honestly held." *E.g., Gagne v. SAFE Fed. Credit Union*, No. 3:18-cv-208, 2020 WL 1482401, at *3 (D.S.C. Mar. 27, 2020) (citing *Thornley*, 104 F.3d at 30).

The plaintiff does not argue that the PIP itself contained sham requirements. Indeed, it would be difficult to do so, since the plaintiff herself created the plan. *See* ECF No. 17, SOF ¶ 23; ECF No. 17-1 at 27:19–28:25. That alone is sufficient for the Court to find for ODU.

Additionally, the grant writing and publication expectations outlined in the PIP are "so clearly related to [the plaintiff's] job" as a research professor that their

---

[4] The PIP outlined five grant proposals and target submission dates. ECF No. 17-2 at 21. One proposal was submitted to a different entity than the PIP identified, *see* ECF No. 17-1 at 29:11–20; a second was submitted a month late, *see id.* at 29:21–30:7; and three others were not submitted at all, *see id.* at 30:8–23; 30:24–31:15; 31:18–32:12. The PIP also identified four new pieces of writing the plaintiff was to submit for publication. ECF No. 17-2 at 21–22. Two were submitted later than the PIP required, *see* ECF No. 17-1 at 32:25–34:2, 34:12–21; and two were never submitted, *see id.* at 34:22–35:10, 35:11–36:13.

"neutrality" is facially obvious. *Brummett*, 284 F.3d at 745. That too would be enough to grant summary judgment.

Furthermore, the plaintiff fails to demonstrate that her supervisor adopted the PIP in bad faith. When a plaintiff attempts to prove a discrimination claim by challenging the legitimacy of their employer's expectations, "the prima facie case is subsumed into one of establishing pretext" under the third step of the *McDonnell Douglas* framework. *Brummett*, 284 F.3d at 745. Therefore, the Court looks to whether the plaintiff produces sufficient evidence to rebut ODU's proffered nondiscriminatory explanation for her non-reappointment.

ODU claims that it chose not to renew the plaintiff's contract because she failed to meet the expectations outlined in the PIP and because funding for her position was no longer available. *See* ECF No. 17 at 32; ECF No. 17-2 at 29.[5] In response, the plaintiff asserts several theories that she argues support a finding of pretext. None are viable.

First, the plaintiff contends that ODU used "[s]hifting [s]tandards" to evaluate her performance. ECF No. 20-1 at 22. The only evidence she cites is a third-party reference to a faculty handbook, which in turn states that review is based on the performance of the individual and the needs of the department. *See id.* at 23 n.2

[5] In a memorandum to the dean who was the final decisionmaker on whether to reappoint the plaintiff, her supervisor stated that while he "recommended [the plaintiff] for reappointment for another year contingent on making significant improvements in several areas and working on a performance improvement plan, . . . [the plaintiff] ha[d] not met the expectations set in the performance improvement plan." ECF No. 17-2 at 29.

(citing ECF No. 20-2 at 14). Preliminarily, that evidence is not admissible to prove the contents of the faculty handbook. *See* Fed. R. Evid. 1002. But even if it were, it does not support the plaintiff's argument. The plaintiff believes that because the standard cites individual performance and the needs of the department conjunctively, the university inappropriately "elevated" the "needs of the department" above other performance criteria when it evaluated her based on her department's five foci (which, the plaintiff acknowledges, captured the department's needs). *See* ECF No. 20-1 at 23 n.2. That makes no logical sense. In reality, an individual evaluated based on criteria A, B, *and* C does not meet expectations if they fail as to C—even if they succeeded as to A and B. No reasonable jury could find a 'shifting standard' there, so it does not support a showing of pretext.

Relatedly, the plaintiff argues that a review committee's conclusion that she satisfied certain evaluation criteria suggests that the university's reliance on her failure under other criteria was pretextual. *See* ECF No. 20-1 at 25. Again, meeting some expectations is simply not evidence that other expectations are not honestly held.

Next, the plaintiff takes issue with ODU's reliance on factors outside the grant writing and research requirements in the PIP. ECF No. 20-1 at 24; *see* ECF No. 17-2 at 27 (citing failure to satisfy criteria established in a 2024 reappointment letter); *id.* at 19 (reappointment letter, identifying areas of improvement). But the mere existence of requirements outside the PIP does not raise a triable issue as to whether ODU "honestly [] held" both sets of expectations. *Thornley*, 104 F.3d at 30.

The plaintiff also proposes that her supervisor's reliance on subjective criteria outside the PIP could support an inference that ODU's judgments were "elastic" and "could be expanded or contracted as needed to support a later decision." ECF No. 20-1 at 24. That may be enough under a lower standard, but "[a]bsent *evidence* that subjective [] criteria were used as a mask for discrimination," such an inference is not reasonable and therefore does not suffice to save a claim from summary judgment. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis added).

Next, the plaintiff posits that the absence of a "[h]uman [r]esources reviewer" in ODU's performance evaluation sequence is evidence that ODU's process was not "neutral." ECF No. 20-1 at 25. But Title VII does not require a neutral process; it only requires employment decisions to be free from illegal discrimination. Moreover, the record contains no evidence that could support a reasonable inference that the university's standard review procedure omitted a human resources reviewer so that decisionmakers could construct sham expectations for this plaintiff.

Finally, the plaintiff asserts that the university's reliance in its briefing on a second basis for the non-reappointment decision—i.e., a lack of funding, *see, e.g.*, ECF No. 17 at 1—suggests pretextual reasoning, because "ODU's own decision documents tied the non-reappointment to alleged failure to satisfy the PIP." ECF No. 20-1 at 26. First, ODU's legal arguments are not evidence. But regardless, the 'decision documents' in the record cite a lack of funding as well as the plaintiff's performance.

ECF No. 17-2 at 20, 28–29. So at best, this theory is a repetition of the argument about 'shifting standards' that the Court dispelled above.

In summary, the plaintiff fails to raise a genuine dispute of fact as to whether she was meeting ODU's expectations at the time it chose not to reappoint her or as to whether the expectations she failed to meet were a sham to hide the university's discriminatory purpose. Therefore, ODU is entitled to judgment as a matter of law.

**B. Inference of Discrimination**

ODU argues no reasonable jury could infer that it discriminated against the plaintiff on the basis of sex by not reappointing her for a third year, given the undisputed evidence that the same people who recommended the non-reappointment decision—the plaintiff's supervisor and the dean—previously advocated *in favor* of hiring or reappointing the plaintiff. *See* ECF No. 17 at 19–20. That is correct.

"Employers who knowingly hire workers within a protected group seldom will be credible targets for pretextual firing," because "it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job." *Proud v. Stone*, 945 F.2d 796, 797–98 (4th Cir. 1991) (cleaned up). As a result, "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring," a Title VII defendant is entitled to "a strong inference . . . that discrimination was not a determining factor for the adverse action." *Id.* at 797.

The plaintiff does not argue that the time span at issue here—less than a year between her reappointment for a second time and her non-reappointment for a

third—is too long for the *Proud* presumption to attach, and the Court finds that it is not. *Compare* ECF No. 17, SOF ¶ 20; ECF No. 17-2 at 20 (reappointment in Spring 2024) *with* ECF No. 17, SOF ¶ 32; ECF No. 17-2 at 30 (decision on non-reappointment in December 2024).

The plaintiff presents no evidence to rebut the presumption. *See* ECF No. 10-1 at 17–18. Instead, she merely argues that "ODU's reliance on a multi-level review process does not establish independent or objective decision making"—which is not at all the standard. *Id.* at 17; *see* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination on the basis of membership in a protected group). The plaintiff asserts that her supervisors' recommendations could have been "coordinated," because the chair of the faculty review committee "worked under" the plaintiff's supervisor. ECF No. 20-1 at 17. But the undisputed record demonstrates that the plaintiff's supervisor made a *different* recommendation than the committee made. *Compare* ECF No. 17-2 at 27 (committee's memo, making no recommendation as to reappointment or non-reappointment) *with* ECF No. 17-2 at 29 (supervisor's memo, stating that the plaintiff had not met expectations and recommending non-reappointment). Thus, the plaintiff does not raise a jury question as to whether her supervisor and the committee chair had any illicit communication, much less as to whether any hypothetical 'coordination' was aimed at discriminating against the plaintiff because she is female. Therefore, the plaintiff fails to make out a prima facie case for discrimination under Title VII. And even if she had put forth enough evidence at the first step of the *McDonnell Douglas* analysis, ODU would be entitled to judgment because—as

described in Part III.A.—the university presents a viable nondiscriminatory reason for its decision, and the plaintiff does not show that the reason was pretextual.

## IV. CONCLUSION

Accordingly, Defendant Old Dominion University's motion for summary judgment (ECF No. 16) is **GRANTED**.

The Clerk is **DIRECTED** to enter judgment in favor of ODU and to close this case.

**IT IS SO ORDERED**.

/s/ JKW

Jamar K. Walker
United States District Judge

Norfolk, Virginia
September 16, 2026